UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| CURTIS L. WATSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 11-2044 (JDB) |
| UNITED STATES PAROLE COMMISSION, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

This matter is before the Court on defendant's motion to dismiss. For the reasons discussed below, the motion will be granted.[1]

### I. BACKGROUND

In 1978, in the Superior Court of the District of Columbia, plaintiff was sentenced to an aggregate term of 30 years to life imprisonment.[2] *See* Compl. at 1. While in the District of

---

[1] Plaintiff's "Formal Request to be Transferred to the Jurisdiction of this Court for Consideration of Release Having Served the D.C. and Federal Sentences" [Dkt. #8] will be denied as moot.

[2] Plaintiff's criminal history has been summarized as follows:

[Plaintiff] was indicted in 1976 on several charges related to two separate incidents occurring at 1926 Quincy Street, N.E.: the May 30, 1976 assault on Richard Knight and the June 6, 1976 shootings of Cynthia Durham and Robert Swearinger. The matters came to trial in 1977, but a mistrial was soon declared because several jurors had been exposed to publicity surrounding the murder of Timothy Reeves, which had also taken place at the Quincy Street premises.

[Plaintiff] was later indicted for the Reeves' murder and a related weapons charge. The trial court subsequently granted the government's motion to

1

Columbia's custody and serving his sentence at its Lorton Reformatory, on August 30, 1988, plaintiff "walked away from a Work Release program and . . . remained on escape status until [October 30, 1995] when he was arrested in Arizona." Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem."), Ex. E (Hearing Summary dated October 21, 2011) at 3. Plaintiff was convicted of escape and on March 15, 1996, he was sentenced to a 12-month term of imprisonment pursuant to 18 U.S.C. § 751 to be served consecutively to the Superior Court sentence. *See* Compl., Ex. (Order, *United States v. Watson*, No. 1:88cr201 (E.D. Va. Dec. 28, 2007)) at 1.

Plaintiff's first parole hearing took place in 2004. Compl. at 3. As of November 8, 2004, he had been incarcerated for 316 months. *See id.*, Ex. (Notice of Action dated November 16, 2004) at 1. The United States Parole Commission ("Commission") denied parole, *see id.*, noting that an upward departure from the applicable parole guidelines was "warranted because . . . [plaintiff had] a 12-month consecutive term to follow [his] current sentence." *Id.* After a reconsideration hearing in October 2007, plaintiff ostensibly had been granted "[p]arole effective December 9, 2007 after service of 353 months to the consecutive 12 month term." *Id.*, Ex. (Notice of Action dated November 20, 2007) at 1. The Commission, however, voided its decision because "[t]he Bureau of Prisons . . . determined that [plaintiff was] not eligible for

---

> consolidate this indictment with the earlier indictment covering the 1976 assaults. Following a jury trial, [plaintiff] was convicted on counts contained in both indictments, *viz.,* first-degree murder while armed . . . , carrying a pistol without a license . . ., two counts of first-degree burglary while armed . . . , assault with a dangerous weapon . . . , and two counts of assault with intent to kill while armed . . . .  Following the denial of his motion for a new trial, [plaintiff] was sentenced to an aggregate term of thirty years to life imprisonment.

*Watson v. United States*, 508 A.2d 75, 76-77 (D.C. 1986) (footnotes omitted), *judgment vacated*, 514 A.2d 800 (D.C. 1986) (per curiam), *aff'd on reh'g*, 536 A.2d 1056 (D.C. 1987) (en banc), *cert. denied*, 486 U.S. 1010 (1988).

parole until [April] 27, 2012." [3] *Id.*, Ex. (Notice of Action dated December 18, 2007) at 1. A hearing was to be scheduled within nine months of petitioner's new parole eligibility date. *Id.*

Plaintiff's next parole hearing occurred on October 21, 2011. Def.'s Mem., Ex. E (Hearing Summary dated October 21, 2011) at 1. According to the Commission, as of October 30, 2011, plaintiff had been incarcerated for only 314 months. *See* Compl., Ex. (Notice of Action dated November 30, 2011) at 1. The Commission again denied parole, and continued the matter for another three years, to October 2014. *Id.*

---

[3]  The aggregate sentence imposed by the Superior Court in 1978 was 30 years to life imprisonment. *See Watson*, 508 A.2d at 77. It appears that, upon plaintiff's transfer to federal custody, BOP staff recalculated his sentence. *See* Def.'s Mem., Ex. E (Hearing Summary dated October 21, 2011) at 1. Plaintiff did not become eligible for parole until April 2012:

> There is no D.C. Code provision controlling the commencement of a sentence. The [BOP] follows two U.S. Code statutory provisions, 18 U.S.C. §3586, for sentences imposed for offenses committed prior to November 1, 1987, and 18 U.S.C. §3585(a), for sentences imposed for offense[s] committed on or after November 1, 1987. [Plaintiff's] sentences imposed in 1978 were "old law" sentences while his sentence[] in 1996 for the escape was a "new law" sentence imposed under the Sentencing Reform Act of 1984. The sentences are computed separately, with the consecutive term for the escape conviction beginning on the date of the completion of the first term of imprisonment.
>
> [Plaintiff's] "old law" aggregated sentence began on August 10, 1978. [His] sentence stopped running while he was out-of-custody after his 1988 escape, and did not begin again until his re-arrest in 1995. . . .  Petitioner's projected parole <u>eligibility</u> date was April 27, 2012, with respect to his 1978 "old law" sentences. If and when he gains parole with respect to that sentence he will begin service of his "new law" sentence."

Order Denying Petition, *Watson v. Warden, FCC Coleman – USP I*, Nos. 5:09-cv-112 & 5:09-cv-200 (M.D. Fla. May 3, 2012) at 4-5 (internal citations to the record omitted). If the Commission were to grant plaintiff parole, he presumably would remain in custody in order that he serve the consecutive 12-month sentence for escape. *See* Def.'s Mem., Ex. F (Hearing Summary dated November 1, 2004) at 3.

## II.  DISCUSSION

### A.  *Plaintiff's Claims*

It is no easy task to decipher the claims plaintiff presents.  The Court begins with plaintiff's assertion that he has "been resentenced by the whims of a rogue agency."  Compl. at 4. The introductory statement to his complaint reads:

> PETITONER [sic] CHALLENGES AS UNCONSTITUTIONAL THE AUTHORITY OF THE UNITED STATES PAROLE COMMISSION TO GRANT OR DENY PAROLE TO THIS OLD LAW D.C. PRISONER WHEN THE D.C. SENTENCE HAS BEEN SERVED IN ITS ENTIRETY.

*Id.* at 1 (emphasis in original).  The Court interprets this statement as a challenge to the Commission's authority to deny him parole and as a claim that he has served his entire Superior Court-imposed aggregate sentence.  He thus contends, apparently, that his continued custody is unlawful and presumably he demands his immediate release.

In addition, plaintiff makes a passing reference, *see* Compl. at 3, to *Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008), presumably for the purpose of alleging "that [the Commission] retroactively applied its own parole guidelines and practices so as to significantly increase the risk that [he] would serve [a] longer term [ ] of incarceration," *id.* at 68.  Plaintiff further alleges that *Sellmon* in effect "voided all parole hearings from 2000 to 2008," and he demands a new parole hearing on this basis.  *See* Compl. at 3 (emphasis in original).  He also appears to argue that his 2011 parole hearing was invalid not only because it was deemed an initial hearing (notwithstanding prior parole hearings in 2004 and 2007), but also because the Commission applied the wrong parole regulations to his case.  *See id.* at 3-4.  Plaintiff demands "injunctive relief to stop this conduct."  *Id.* at 4.

### B. The Commission Is Authorized to Deny Plaintiff Parole

According to plaintiff, the Commission lacks the authority to deny him parole, *see* Compl. at 1, and in effect it has "resentenced" him, *id.* at 4. Plaintiff is mistaken.

It is well settled that the Commission "has had jurisdiction over parole matters of District of Columbia felons since August 1998." *Ray v. U.S. Parole Comm'n*, No. 11-2127, 2012 WL 252238, at *2 (D.D.C. Jan. 26, 2012) (citations omitted); *see Franklin v. District of Columbia,* 163 F.3d 625, 632 (D.C. Cir. 1998) (discussing the transfer of parole jurisdiction for District of Columbia prisoners to the Commission). It may grant, deny, or revoke parole, and it may impose or modify conditions of parole for any felon who is eligible for parole or reparole under District of Columbia law. *See* D.C. Code § 24-131(a). The statutes under which the Commission operates "govern the execution of a judicially imposed sentence." *Moore v. U.S. Parole Comm'n*, No. 10-1987, 2011 WL 550003, at *1 (D.D.C. Feb. 10, 2011). The Commission is not a court; it merely exercises administrative authority over the execution of a sentence. *See Maddox v. Elzie,* 238 F.3d 437, 445 (D.C. Cir. 2001). Its actions neither usurp the authority of the sentencing court nor violate the separation of powers doctrine. *See, e.g., Monroe v. District of Columbia*, No. 12-0558, 2012 WL 1229333, at *1 (D.D.C. Apr. 11, 2012).

### C. The Relief Plaintiff Demands Sounds in Habeas

Plaintiff challenges the calculation of his sentence and claims to have served his Superior Court sentence in full. *See* Compl. at 1-2; *see also* "Plaintiff['s] . . . Formal Request to be Transferred to the Jurisdiction of this Court for Consideration of Release Having Served the D.C. and Federal Sentences" [Dkt. #8] at 1-2.

Where, as here, a prisoner "challeng[es] the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus."). Therefore, a prisoner cannot bring a civil action seeking a declaratory judgment in order to obtain his release. *See LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C. Cir. 1996) (concluding that plaintiffs challenging the constitutionality of federal extradition statutes could do so through a petition for writ of habeas corpus, not through a civil action for declaratory and injunctive relief); *Monk v. Sec'y of the Navy*, 793 F.2d 364, 366 (D.C. Cir. 1986) (concluding that service member could not challenge conviction by court martial through a civil action seeking declaratory judgment); *Smocks v. United States*, No. 10-0361, 2010 WL 1780270, at *1 (D.D.C. May 3, 2010) (concluding that prisoner must proceed by means of a habeas petition, not a complaint under the Declaratory Judgment Act, to challenge the constitutionality of certain provisions of federal law pertaining to his ability to seek release from custody).

Furthermore, habeas actions are subject to jurisdictional and statutory limitations. *See Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484 (1973). One such limitation is the requirement that a habeas corpus action be brought against the plaintiff's warden. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); *Blair-Bey v. Quick*, 151 F.3d 1036, 1039 (D.C. Cir. 1998) (citing *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810 (D.C. Cir. 1988)). Moreover, this district court cannot "entertain a habeas petition involving present physical custody unless the

[plaintiff's] custodian is within its territorial jurisdiction."[4]  *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1239 (D.C. Cir. 2004).

The relief that plaintiff demands sounds in habeas and therefore is not available by means of a civil action seeking a declaratory judgment and injunctive relief.  Nor is this district court the proper forum for adjudication of plaintiff's habeas claim.

### D. The Commission Properly Applied Its 2000 Guidelines

Plaintiff objects to the Commission's decisions to treat the October 21, 2011 parole hearing as an initial hearing and to apply its own parole guidelines.  *See* Compl. at 3.  Plaintiff does not articulate, nor has the Court identified, a statutory or constitutional violation with regard to the Commission's acknowledgement of an apparent error in the calculation of plaintiff's parole eligibility date.  The 2004 and 2007 hearings occurred prematurely according to the BOP's calculation of plaintiff's sentence, and it follows that the Commission conducted the October 21, 2011 hearing as an initial hearing in anticipation of plaintiff's correct parole eligibility date, April 27, 2012.

Turning to the complaint's reference to *Sellmon*, the Court presumes that plaintiff raises an *ex post facto* claim that the Commission "is applying later-adopted laws that disadvantage him instead of the laws that were in effect at the time he committed the offenses." *Austin v. Reilly*, 606 F. Supp. 2d 4, 9 (D.D.C. 2009) (citing *Weaver v. Graham*, 450 U.S. 24, 30 (1981)).  In the parole context, plaintiff could argue that the retroactive application of the Commission's own

---

[4]   Plaintiff currently is incarcerated at the United States Penitentiary in Coleman, Florida. Recently the United States District Court for the Middle District of Florida considered, and rejected, plaintiff's challenge to the calculation of his release date and parole eligibility date. *See* Order Denying Petition, *Watson v. Warden, FCC Coleman – USP I*, Nos. 5:09-cv-112 & 5:09-cv-200 (M.D. Fla. May 3, 2012), *appeal docketed*, No. 12-12618 (11th Cir. May 15, 2012).

Case 1:11-cv-02044-JDB   Document 17   Filed 06/28/12   Page 8 of 8

guidelines, *see* 28 C.F.R. § 2.80, rather than the regulations promulgated by the former District of Columbia Board of Parole in 1987, "creates 'a significant risk' of a 'longer period of incarceration than under the earlier rule.'" *Sellmon*, 551 F. Supp.2d at 84 (quoting *Garner v. Jones*, 529 U.S. 244, 255 (2000)).  But this claim is meritless.

Nothing in the record of this case suggests that the former Parole Board's regulations apply to plaintiff.  "[A] plaintiff may invoke *ex post facto* protection only on the basis of the parole regime that was in effect at the time he committed his offense[s]."  *Austin*, 606 F. Supp. 2d at 7-8 (citation omitted).  Plaintiff committed his offenses in or about 1976, *see Watson*, 508 A.2d at 76, years before the Parole Board promulgated the regulations at issue in *Sellmon*.  At the time plaintiff committed the offenses for which he now is serving his sentence, "parole eligibility was determined by a D.C. Parole Board that operated with nearly complete discretion," *Wilson v. Fulwood*, 772 F. Supp. 2d 246, 252 (D.D.C. 2011) (citing *Austin,* 606 F. Supp. 2d at 8), subject only to regulations promulgated by the Parole Board in 1972, *see id.*  Given the "totally unfettered" discretion under which the Parole Board operated in those days, *see Sellmon v. Reilly*, 561 F. Supp. 2d 46, 50 (D.D.C. 2008), the Court cannot conclude that plaintiff would have fared better under a prior regime.

Accordingly, the Court will grant defendant's motion to dismiss.  An Order accompanies this Memorandum Opinion.

JOHN D. BATES  
United States District Judge

DATE: June 26, 2012